514 A.2d 1

Suzanne C. BAYSINGER et vir.,

v.

SCHMID PRODUCTS COMPANY.

No. 1, Sept. Term, 1986.

Court of Appeals of Maryland.

Aug. 28, 1986.

Michael A. Pretl (Nicole Schultheis and Pretl & Schultheis, P.A., on the brief), Baltimore, for appellant Baysinger.

Phillips P. O'Shaughnessy (John E. Sandbower III and Sandbower, Gabler & O'Shaughnessy, P.A., on the brief), Baltimore, for appellee Schmid Products Co.

Argued before MURPHY, C.J., SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

In this products liability case, Schmid Products Company, appellee and manufacturer of the Saf-T-Coil intrauterine device used by appellant Suzanne C. Baysinger, obtained a dismissal of appellant's action through the granting of its motion for summary judgment by the Circuit Court for Worcester County. This decision was founded on the conclusion of the trial judge that the action was time barred, not having been filed within three years of its accrual.[1] The Court of Special Appeals affirmed in an unreported, per curiam opinion, No. 259, September Term, 1985, filed November 29, 1985. We granted certiorari to consider the following issues:

1. Whether the trial court may determine that a cause of action has accrued under the discovery rule, on motion for summary judgment, by resolving factual inferences, evaluating witnesses' credibility, and deciding other matters generally reserved for the jury.

2. Whether under the discovery rule, knowledge of a manufacturer's wrongdoing or of product defect is required, in addition to knowledge of possible causation, to

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, § 3A, he also participated in the decision and the adoption of this opinion.

1. *"§ 5-101. Three-year limitation in general.*
    A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Maryland Code (1974, 1984 Repl.Vol.), Courts & Judicial Proceedings Article, § 5-101.

trigger the statute of limitations in a medical products liability action.

Our conclusion as to the first issue makes it unnecessary to consider the second. As to the first issue, we hold the trial judge erred in granting appellee's motion for summary judgment, as did the Court of Special Appeals in affirming the trial judge's ruling. Consequently, we reverse.

The factual backdrop leading to the present dispute is largely uncontroverted. In May, 1979, Mrs. Baysinger had a Saf-T-Coil intrauterine contraceptive device inserted at the Wicomico County Health Department family planning clinic. The device was worn by her until she began to experience lower abdominal pains in November of that year. She then came under the care of Dr. James P. Gallaher who removed the coil and prescribed Ampicillin. Mrs. Baysinger's symptoms improved until December 25, 1979 when she was admitted to a local hospital with severe abdominal pain and high fever; she was subsequently diagnosed as having acute peritonitis with bilateral tubo-ovarian abscesses. It now appears that she may be infertile.

On January 17, 1984, the Baysingers filed suit against Schmid Products Company seeking compensation for these injuries. Mrs. Baysinger alleges that she did not know the cause of her injury or of the "facts underlying defendant's wrongdoing or the defective nature of its product until after January, 1983." Furthermore, the deposition of Dr. Gallaher and Mrs. Baysinger's affidavit demonstrate that Dr. Gallaher had no idea what caused her illness; nor did his associate, Dr. Cho, who tended her during her December, 1979 hospitalization. Mrs. Baysinger had asked Dr. Cho specifically whether the coil was responsible, and he responded that there could be several possible causes but could not state the coil was responsible. This conversation was reflected in appellant's affidavit filed in opposition to the motion for summary judgment wherein she stated:

"That during the hospitalization at Penisula [sic] General Hospital in December 1979–January 1980 she inquired

of Dr. Cho whether there may have been some causal relationship between her use of an intrauterine device (which had been removed a few weeks earlier) and the severe infection which put her in the hospital; the subject has also been discussed with Dr. Cho since that hospitalization. She has been concerned whether the infection and related injuries which she suffered were related to use of the intrauterine device, on the one hand, or may have been caused by toxic shock syndrome or related to sexual intercourse. Dr. Cho has consistently expressed an opinion, which apparently is still his opinion today, that although intrauterine devices have been associated with pelvic infection in the literature, he has no way of determining whether her infection was caused by the Saf-T-Coil or by some other unrelated occurrence or instrumentality."

However, according to her affidavit she did get some indication of possible causation from her sister in approximately January, 1983. This came about as a result of an advertisement in a local newspaper. It was at this time she sought counsel and suit was filed, albeit more than three years from the purchase date of the coil and from the November, 1979 onset of abdominal pain. Following a limited amount of discovery (the taking of Dr. Gallaher's deposition by appellee), Schmid Products filed a motion for summary judgment based entirely on its contention that the statute of limitations had run since some four years and one month had elapsed from the accrual of Mrs. Baysinger's cause of action.

In a written "Opinion and Order of Court" the trial judge, after reviewing the pleadings, Mrs. Baysinger's affidavit, Dr. Gallaher's deposition, and the record, concluded in pertinent part:

"As Mrs. Levy's [*Lutheran Hosp. of Maryland v. Levy*, 60 Md.App. 227, 482 A.2d 23 (1984), *cert. denied,* 302 Md. 288, 487 A.2d 292 (1985) ] visit to Dr. Wiedmann did not occur in a vacuum, neither did Mrs. Baysinger's hospitalization in December of 1979 occur in a vacuum.

From her inquiry it is clear that no later than December of 1979 at least some suspicion existed on her part that her problems might be related to the Saf-T-Coil device.

"Obviously, Mrs. Baysinger, after having had a recently implanted device removed in November, 1979, as treatment for her abdominal distress followed by hospitalization in December, 1979, with similar symptoms and her resulting inquiries as to the cause of her distress, was, or should have reasonably been aware that she 'might have been wronged' (*Lutheran* supra page 6 of Slip Opinion) by the device."

Drawing loosely from language in *Lutheran* and *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981), the trial judge continued:

"On the record before this Court a reasonable fact finder could only conclude that as of December, 1979, Mrs. Baysinger had knowledge; (or should have had knowledge) of circumstances which ought to have put her 'with notice of all facts which such an investigation would have disclosed if it had been properly pursued.'

"As implicitly inferred in *Lutheran* the limitation period, in this case three years, gives ample time to conduct further investigation in reference to such claims.

'From that date the statute itself allows sufficient time ___ three years ___ for reasonably diligent inquiry and for making a decision as to whether to file suit (*Lutheran* supra).'

"In *Lutheran,* Mrs. Levy argued that her cause of action did not accrue until she had in hand an expert opinion that Lutheran had been guilty of malpractice. A very similar argument was made by Mrs. Baysinger's counsel in the instant case."

The trial court finally concluded:

"The Court finds that Plaintiff's causes of action are barred by the limitation period and having so found it is clear that no genuine dispute as to a material fact exists

and that the Defendant is entitled to judgment as a matter of law."

There appears to be no dispute among the parties as to the applicable law regarding when a cause of action accrues; nor should there be in light of our recent holding in *O'Hara v. Kovens*, 305 Md. 280, 503 A.2d 1313 (1986).[2] In *Kovens*, we said, in part:

> "The three years within which a civil action at law must be filed measures 'from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.' Md. Code (1974, 1984 Repl. Vol.), § 5–101 of the Courts and Judicial Proceedings Article (Courts Article). *Poffenberger v. Risser*, 290 Md. 631, 636, 431 A.2d 677, 680 (1981) held that 'the discovery rule [is] applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong.' This latter alternative contemplates ... awareness implied from
>
>> 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.' [*Id.* at 637, 431 A.2d at 681.]"

305 Md. at 286–87, 503 A.2d at 1316.

What is in dispute here is whether on this record the case was in such posture as to warrant the trial court ruling that as a matter of law Mrs. Baysinger's cause of action accrued in late 1979. Keeping in mind that the trial court was considering a motion for summary judgment where all inferences must be drawn against the movant, *see Peck v. Baltimore Court*, 286 Md. 368, 410 A.2d 7 (1979), it seems to us that the trial court erred in finding that as a matter of

---

**2.** We note that the trial court and the Court of Special Appeals did not have the benefit of our opinion in *Kovens* which was filed subsequent to their consideration of the case *sub judice.*

law, Mrs. Baysinger had notice in late 1979 barring her suit filed in 1984. As Judge Rodowsky said for the Court in *Kovens:*

"We shall assume, without deciding, that there is no dispute of material, primary fact in the instant case. From the primary facts some tribunal must deduce when the plaintiffs were on notice. That ultimate fact is ordinarily a question for the trier of facts going to the merits. ' "[W]hether or not the plaintiff's failure to discover his cause of action was due to failure on his part to use due diligence, or to the fact that defendant so concealed the wrong that plaintiff was unable to discover it by the exercise of due diligence, is ordinarily a question of fact for the jury." ' " (Citations omitted).

305 Md. at 294–95, 503 A.2d at 1320.

In the instant case, the question of fact presented was: when did Mrs. Baysinger have knowledge of circumstances which would cause a reasonable person in her position to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the wrong? While the sparse record of facts before the trial judge demonstrated that Mrs. Baysinger's suspicions concerning the cause of her infection included the intrauterine device, it also showed that she initiated a preliminary investigation by discussing her suspicions with Dr. Cho, and that Dr. Cho told her he had "no way of determining whether her infection was caused by the Saf-T-Coil or by some other unrelated occurrence or instrumentality." The record further discloses that at that time Dr. Gallaher had no idea of what caused her illness, and consequently further investigation by way of inquiry of Dr. Gallaher would have been fruitless. We further note that while the record indicates that Mrs. Baysinger entertained various suspicions concerning the cause of her illness, there is no evidence that she then suspected, or reasonably should have suspected, wrongdoing on the part of anyone. Whether a reasonably prudent person should then have undertaken a further investigation is a matter about which reasonable minds could differ, and

it was therefore inappropriate for resolution by summary judgment.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.